UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEROME POLVAY, Individually
and on Behalf of all Others
Similarly Situated,

        Plaintiff,

    -v-

FCTI, INC., and DOES 1-10,
Inclusive,

        Defendants.

22-cv-4315 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

On February 3, 2023, plaintiff Jerome Polvay moved to certify a class of New York consumers who were assessed multiple fees for making balance inquiries at one of defendant FCTI's ATMs between May 1, 2018, and November 16, 2021. See Pl. Mem. of Law in Supp. of Mot. for Class Certification ("Pl. Mem.") at 3, ECF No. 45. After full consideration of the parties' written submissions and oral argument, the Court granted plaintiff's motion by "bottom-line" order dated April 28, 2023. This Opinion reconfirms that order, explains the reasons for its ruling, and directs counsel to call Chambers to set a prompt trial date.

I.   Factual Background[1]

Defendant FCTI, Inc. ("FTCI") provides ATMs to 7-Eleven convenience stores. Carpenter Decl., Ex. 5, at 15:17-23, ECF No. 35-5.[2] From May 1, 2018, to November 16, 2021, all New York customers who used one of defendant's ATMs saw the same initial prompt: "Would you like to view your account balance?" See Spirra Decl., Ex. 1, at FCTI000047, ECF No. 28-1; Carpenter Decl., Ex. 5, at 117:5-13, 118:2-14. If the customer selected "Yes," an account selection screen would appear, and the customer would be asked to choose the account from which the balance information should be retrieved. See Spirra Decl., Ex. 1, at FCTI000048; Carpenter Decl., Ex. 5, at 118:15-18. Making the account selection constituted a balance inquiry, so a balance inquiry fee would be assessed to the customer. Carpenter Decl., Ex. 5, at 119:2-7; First Am. Compl. ("FAC"), ¶ 31, ECF No. 14.

After the customer selected an account, a prompt would appear and ask the customer, "Would you like to print your Balance and continue the Transaction?" (hereinafter referred to as the "Continue/Cancel Prompt" screen). See Spirra Decl., Ex. 1, at

---

[1] The Court presumes familiarity with its prior opinion denying summary judgment. See 3/10/23 Mem. Order, ECF No. 53. Accordingly, the Court will recount only those facts that are relevant to class certification.

[2] Although the case caption references defendants "Does 1-10," plaintiff has not identified or joined any additional defendants. Thus hereinafter "defendant" refers to only FCTI.

FCTI000049; Carpenter Decl., Ex. 5, at 118:20-119:21. If the customer selected "Continue," this would be treated as a second balance inquiry and a second balance inquiry fee would be assessed to the customer. See Carpenter Decl., Ex. 5, at 119:22-120:7; Polvay Decl., ¶ 6, ECF No. 34. For each of these balance inquiries that customers made, FCTI received an interchange fee, which is a major source of its revenue. FAC, ¶¶ 2, 12-15.

This lawsuit centers on the "Continue/Cancel Prompt" screen. Plaintiff Jerome Polvay, on behalf of a putative class of ATM users charged fees in the aforementioned manner, alleges that the "Continue/Cancel Prompt" screen is deceptive because it does not reasonably appear to be a second balance inquiry, but defendant FCTI treats it as such, which causes customers that select "Continue" to be charged unwittingly for a second balance inquiry fee. FAC, ¶¶ 3-6, 11, 16, 27, 32-37, 40-41, 48. Plaintiff thus alleges that FTCI engaged in deceptive practices and false advertising in violation of New York General Business Law ("GBL") Sections 349 and 350. See id. ¶¶ 55-69.

The Court previously denied FCTI's motion for summary judgment, finding that genuine disputes of material fact existed regarding whether the "Continue/Cancel Prompt" screen was deceptive and whether it caused an injury to plaintiff. See 3/10/23 Mem. Order. Plaintiff then sought to certify the following class under Federal Rule of Civil Procedure 23(b)(3):

> All holders of a checking account at one, or more, Banks[3] who were assessed more than one fee for a balance inquiry during the same visit at a FCTI ATM in the State of New York from May 1, 2018 to November 16, 2021.

See Pl. Mem. at 3. The Court granted the motion to certify that class by "bottom-line" order on April 28, 2023. See 4/28/23 Order, ECF No. 55.

## II.   Legal Standard

To certify a class, the plaintiff must show "by a preponderance of the evidence that each of Rule 23's requirements have been met." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010).[4] Here, plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3). Plaintiff must therefore show that the requirements of Federal Rule of Civil Procedure 23(a) are met (numerosity, commonality, typicality, and adequacy) and also that the requirements of Federal Rule of Civil Procedure 23(b)(3) are met, viz., that "questions of law or fact common to class members predominate over any questions affecting only individual members and that class treatment would be superior to

---

[3] "Banks" is a defined term. It includes New York Community Bank, KeyBank, Webster Bank, M&T Bank, TD Bank, Community Bank, Citizens Bank, NBT Bank, Bank of America, and Wells Fargo. See Pl. Mem. at 3 n.1.

[4] Unless otherwise indicated, all case quotations omit all internal quotation marks, alterations, footnotes, and citations.

individual litigation." Id. See also Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 512 (2d Cir. 2020).[5]

III. Discussion

Plaintiff seeks to pursue claims under New York GBL Sections 349 and 350 on behalf of the class.[6] Section 349 of the New York GBL makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. N.Y. Gen. Bus. Law § 349. Section 350 of the New York GBL makes it unlawful to engage in "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. N.Y. Gen. Bus. Law § 350. Under either statutory provision, the elements of a cause of action are the same. See Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002). "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" Orlander v.

---

[5] Under Second Circuit precedent, there is also an ascertainability requirement. In re Petrobras Sec., 862 F.3d 250, 264 (2d Cir. 2017).

[6] This Court has original jurisdiction over this class action under 28 U.S.C. § 1332(d)(2).

Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (2012)).

Defendant's opposition to class certification centers on one main argument: according to FCTI, a key element of plaintiff's claims -- causation -- cannot be proven on a class-wide basis.[7] Defendant argues that causation must be determined on an individual, rather than class, basis because whether the allegedly deceptive "Continue/Cancel Prompt" screen caused damages to a given consumer depends on whether the consumer understood that pressing "Continue" would initiate and charge the consumer for a second balance inquiry and on whether the consumer would not press "Continue" if the consumer understood a second balance inquiry would be initiated. Accordingly, defendant contends that the class definition is overbroad and that plaintiff cannot demonstrate that the commonality, predominance, superiority, ascertainability, and typicality requirements are met for the proposed class.

In essence, defendant urges that the Court must probe whether each individual customer relied on the allegedly deceptive

---

[7] Defendant also raises two ancillary arguments. First, defendant argues that plaintiff has not sufficiently demonstrated that his proposed algorithm can identify class members, thus showing the class is not ascertainable. Second, defendant contends that plaintiff's failure to join the banks as defendants limits the Court's ability to fashion an appropriate remedy and thus shows a class action is not the superior vehicle for litigating this lawsuit. The Court addresses these ancillary arguments in a later section of this Opinion.

"Continue/Cancel prompt" screen to determine whether plaintiff has proven causation for each individual class member. Thus, defendant's position boils down to an undecided question of New York State Law: must proof of actual reliance be required for claims under Section 349 and 350 of the New York GBL asserted by a class? For the reasons explained below, the Court predicts that this undecided question of law will be resolved with a presumption of reliance.

### A. Presumption of Reliance

#### 1. Relationship between Causation and Reliance

The New York Court of Appeals has never specifically addressed whether or how a reliance-like inquiry can be incorporated into an analysis of causation under the statutes here in issue. However, the New York Court of Appeals has established three relevant legal principles. First, Sections 349 and 350 of the New York GBL do not independently require proof of reliance as an essential element of a claim brought under either of these statutes. Koch, 18 N.Y.3d at 941-42 ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim."); Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000) ("[A]s we have repeatedly stated, reliance is

not an element of a section 349 claim.").[8] Second, however, even if reliance is not a required element of a claim under Sections 349 and 350, causation is. See Koch, 18 N.Y.3d at 941. See also Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995) ("By the same token, while the statute does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm."); Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 55-56 (1999) (similar); Stutman, 95 N.Y.2d at 29 (similar). Third and finally, there is a relationship between reliance and causation. See Stutman, 95 N.Y.2d at 30 ("Reliance and causation are twin concepts, but they are not identical. In the context of fraud, they are often intertwined. But there is a difference between reliance and causation.").

---

[8] The Second Circuit has previously stated "[u]nlike a private action brought under § 350, a private action brought under § 349 does not require proof of actual reliance." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005). Although the Second Circuit appears to have stated at one time that reliance is an element of a Section 350 claim, the Court is not bound by that statement for two reasons. First, the Section 350 claim was not properly before the Court in that case, so any discussion of the Section 350 claim is dicta. See Pelman, 396 F.3d at 511 ("[W]e regard any challenge to the dismissal of the § 350 claims as abandoned."). Second, since the Second Circuit's decision, the New York Court of Appeals has clarified that reliance is not an element of a cause of action under Section 350 or Section 349. Koch, 18 N.Y.3d at 941-42.

Against this backdrop, the Court must predict what the New York Court of Appeals would do if squarely faced with the present issue: can causation under these statutes require a reliance-like inquiry and if so, how? See Lelchook v. Société Générale de Banque au Liban SAL, 67 F.4th 69, 76 (2d Cir. 2023) ("To the extent that New York law is uncertain or ambiguous on the issue, our task is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity."). When undertaking this analysis, the Court will "give fullest weight to the decisions of . . . [New York's] highest court," give "proper regard to the decisions of . . . [New York's] lower courts, and . . . consider the decisions of federal courts construing [New York] state law." Id.

## 2. State Law Prediction

This Court predicts that the New York Court of Appeals would apply a presumption of reliance in cases where causation incorporates a reliance-like inquiry. Before the New York Court of Appeals clarified that a claim under Section 350 of the New York GBL does not require a showing of reliance, some New York lower courts held that reliance was a required element of a Section 350, but under certain circumstances it could be presumed. Specifically, while some lower courts denied class certification on a Section 350 claim because individual issues of reliance

predominated, e.g., Klein v. Robert's Am. Gourmet Food, Inc., 808 N.Y.S.2d 766, 773-74 (2d Dep't 2006); Morrissey v. Nextel Partners, Inc., 895 N.Y.S.2d 580, 588 (3d Dep't 2010), other courts recognized a presumption of reliance could be appropriate "when [the] defendant[] effectively controlled all the information about the transaction," Small v. Lorillard Tobacco Co., Inc., 679 N.Y.S.2d 593, 600 (1st Dep't 1998). But see Sabater ex rel. Santana v. Lead Indus. Ass'n, Inc., 704 N.Y.S.2d 800, 808 (Sup. Ct. 2000) ("Reliance on defendants' misrepresentations will not be presumed where plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by using ordinary intelligence."); Hazelhurst v. Brita Prods. Co., 744 N.Y.S.2d 31, (1st Dep't 2002) ("[S]uch reliance may not be presumed where, as here, a host of individual factors could have influenced a class member's decision to purchase the product."); Berkman v. Robert's Am. Gourmet Food, Inc., 841 N.Y.S.2d 825(Sup. Ct. 2007) (similar). New York State courts have also recognized a presumption of reliance in other contexts. See, e.g., in re Coordinate Title Ins. Cases, 784 N.Y.S.2d 919 (Sup. Ct. 2004) (fraud clam "involving material omissions"); Ackerman v. Price Waterhouse, 252 A.D.2d 179, 197-201 (1st Dep't 1998) ("negligent misrepresentation claim against a professional").

If at least some New York state courts recognized a presumption of reliance could apply even when the courts believed

a Section 350 claim required a showing of reliance, then a presumption of reliance should certainly be available now that a Section 350 claim (like a Section 349 claim) does not even require a showing of reliance. The Court therefore concludes a presumption of reliance should be available for a Section 350 claim at the class certification stage. Additionally, the same presumption should be available for a Section 349 claim, because "[t]he standard for recovery" is the same for claims under Sections 349 and 350 and actual reliance has never been an essential element of a Section 349 claim. See Goshen, 98 N.Y.2d at 324 n.1.

The next question then becomes: what are the proper parameters of this presumption? Stutman v. Chemical Bank, 95 N.Y.2d 24 (2000), suggests the answer. There, the New York Court of Appeals analogized the difference between reliance and causation for purposes of a Section 349 claim to the difference between reliance and causation in certain securities fraud cases. Stutman, 95 N.Y.2d at 30 n.2. Specifically, the New York Court of Appeals explained that under Section 349 of the New York GBL, an allegation "that defendant's material deception caused [plaintiffs] to suffer [a monetary] loss" is sufficient for purposes of causation; "[p]laintiffs need not additionally allege that they would not have otherwise entered into the transaction" (as would be required for showing reliance). Id. at 30. The Court then went on note that this is much like "the securities context" where "proof of reliance

is not required where a duty to disclose material information has been breached, or where there are material omissions or misstatements in a proxy statement[;] [r]ather, the materiality of the omission or misstatement satisfies the causation requirement." Id. at 30 n.2 (citing Affiliated Ute Citizens of Utah v. U.S., 406 U.S. 128, 154 (1972); Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 385 (1970)).

The reference to Affiliated Ute is instructive because the presumption constructed in Affiliated Ute solved a similar problem to the one now confronting this Court. In Affiliated Ute, the Supreme Court held that instead of showing "positive proof of reliance," all that a plaintiff must establish in securities fraud cases centering on actionable omissions "is that the facts withheld" are "material in the sense that a reasonable investor might have considered them important in making th[e] decision." Affiliated Ute, 406 U.S. at 153-54. "[T]he rationale for [the Affiliated Ute] presumption" is that when "no positive statement[] exist[s][,] reliance as a practical matter is impossible to prove." Wilson v. Comtech Telecommuns. Corp., 648 F.2d 88, 93 (2d Cir. 1981). Similarly, here, the Court is confronted with the practical impossibility of showing reliance on a class-wide basis absent a presumption.

There are also doctrinal similarities between securities fraud cases where the Affiliated Ute presumption applies and cases

involving Section 349 and 350 claims that make the Affiliated Ute presumption particularly apt. The Second Circuit has noted that the "presumption of reliance" under Affiliated Ute "sometimes amounts to a presumption of causation." Madison Consultants v. Fed. Deposit Ins. Corp., 710 F.2d 57, 65 n.6 (2d Cir. 1983). That is a perfect match for the issue now confronting this Court: how causation can be shown based on a presumption of reliance. An additional similarity is that the Affiliated Ute presumption uses materiality, which is already an element of a securities fraud claim, as a proxy for reliance. See Puddu v. NYGG (Asia) Ltd., 15-cv-8061, 2022 WL 2789250, at *1 (S.D.N.Y. July 15, 2022) ("reliance may be presumed so long as the omissions are material"); Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005) (noting "a material misrepresentation (or omission)" is a required element of a securities fraud claim). Here, materiality is an element of a claim under Section 349 and 350. Orlander, 802 F.3d at 300. So, the Court could construct a presumption that centers on materiality without adding an additional element to a claim under Section 349 or 350.

To translate the Affilated Ute presumption into this context, this Court will take direction from the California courts, which have long applied a similar presumption to claims under California's Consumers Legal Remedies Act ("CLRA"), which prohibits certain unfair trade practices. The CLRA provides that

"[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain" one of the statutorily enumerated remedies. Cal. Civil Code § 1780(a).[9] Courts have interpreted this provision to "require[] . . . show[ing] not only that a defendant's conduct was deceptive but [also] that the deception *caused* them harm." Mass. Mut. Life Ins. Co. v. Super. Ct., 97 Cal. App. 4th 1282, 1292 (2002) (emphasis added). To prevent the causation element from precluding class certification, California courts have allowed materiality to stand in for causation and accordingly applied "an inference of reliance . . . as to the entire class" if "material misrepresentations were made to the class members." See id. at 1292-93. See also, e.g., Astiana v. Kashi Co., 291 F.R.D. 493, 504-05 (S.D. Cal. 2013) ("For the purposes of class certification, it is sufficient that the alleged material misstatement and omission was part of a common advertising scheme to which the entire class was exposed, and is a sufficiently definite representation whose accuracy has been legitimately called into question.").

---

[9] California Civil Code Section 1770 lists "[t]he unfair methods of competition and unfair or deceptive acts or practices" that "are unlawful." Cal. Civ. Code § 1770(a).

Accordingly, the Court will apply the following presumption, which centers on materiality like the Affiliated Ute presumption and is based upon a similar presumption that courts apply under California law. If a plaintiff can show that each class member was automatically shown the "Continue/Cancel Prompt" before pressing the "Continue" button and that the "Continue/Cancel Prompt" was objectively material and misleading, then a presumption of reliance for purposes of showing causation will apply. This closely mirrors the Affiliated Ute presumption but adds an additional temporality requirement, as a statement cannot be material to a purchasing decision if a consumer never saw it (which is generally not an issue in cases in which the Affiliated Ute presumption applies).

## B. Application of the Presumption of Reliance

Here, plaintiff may invoke this presumption of reliance that in effect satisfies causation. First, there is evidence that each class member must have seen the allegedly deceptive "Continue/Cancel Prompt" screen before pressing "Continue." As the Court recounted above, the Continue/Cancel Prompt screen was uniformly displayed at FCTI's ATMs during the class period and only those consumers that were assessed two balance inquiry fees are included within the class. Second, the "Continue/Cancel Prompt" screen is objectively misleading and material. The Court

already denied summary judgment to defendant, finding that there was a genuine dispute of material fact about whether the Continue/Cancel Prompt screen was clear that pressing "Continue" would initiate a second balance inquiry. See 3/10/23 Order at 7-8. This was in essence a determination that there was sufficient evidence for the issue of whether "Continue/Cancel Prompt" screen was materially misleading to reach the jury. In addition, plaintiff has put forward evidence that the Compliance Department at Pulse Network, an ATM Network, found that the "Continue/Cancel Prompt" screen violated its rules and that no "reasonable person would interpret this question to mean the cardholder is actually requesting a second Inquiry." Carpenter Decl., Ex. 16, at FCTI 0490, ECF No. 46-16. This evidence is more than sufficient to invoke the presumption.

Of course, defendant can seek to rebut this presumption even at the class certification stage. See Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 279-84 (2014). But here, defendant has not put forward sufficient evidence to rebut this presumption of reliance. Defendant speculates that some customers were aware that printing their account balance would result in a second balance inquiry fee based on agreements, disclosures, and account statements they received from their banks. However, defendant has put forward no affirmative evidence that these disclosures or agreements stated that printing an account balance would

constitute a second balance inquiry. Additionally, the evidence that certain customers incurred two balance inquiry fees on multiple occasions, see Kulik Decl., ¶¶ 2-4, ECF No. 51-3, is insufficient to show the "Continue/Cancel Prompt" screen had no effect on their decision to press "Continue." This evidence can just as plausibly be explained by these customers not knowing or understanding that pressing "Continue" was the reason they were assessed a second balance inquiry fee. Accordingly, defendant cannot and has not rebutted the presumption.

Because plaintiff is entitled to invoke the presumption of reliance here, the Court finds that defendant's argument that causation must be determined on an individual basis and thus the commonality, predominance, superiority, ascertainability, and typicality requirements cannot be met and the class definition is overbroad is without merit and stands as no impediment to class certification.

With defendant's main objection to class certification out of the way, the Court finds that plaintiff has easily satisfied all the elements for class certification under Federal Rule of Civil Procedure 23(b)(3).

Starting with the requirements under Federal Rule of Civil Procedure 23(a), it is uncontested that the numerosity requirement is met. "Courts in the Second Circuit presume that the numerosity requirement is met if a putative class has forty or more members."

<u>Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.</u>, 301 F.R.D. 116, 131 (S.D.N.Y. 2014). Here, plaintiff's expert analyzed a sample set of data from one of the banks in the class, Bank of America, for a limited time period, from May to June of 2018, and found that at least 65,543 accounts were charged two balance inquiry fees nationwide. <u>See</u> Carpenter Decl., Ex. 10, ¶¶ 15, 22, ECF No. 35-10. Even assuming only a small portion of that number is New York customers, there would likely still be a large number of affected New York consumers from Bank of America alone, which would satisfy the numerosity requirement even if the class were only those New York consumers that used an FCTI ATM between May and June of 2018 and were charged two balance inquiry fees by Bank of America. However, the class definition includes <u>ten</u> banks and spans <u>three</u> years; therefore, the number of customers impacted by the alleged deception here is likely far greater than the 65,543 accounts found in the nationwide sample. Numerosity is thus easily satisfied.

Second, the commonality requirement "is satisfied if there is a common issue that 'drives the resolution of the litigation' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke.'" <u>Sykes v. Mel S. Harris & Assocs. LLC</u>, 780 F.3d 70, 84 (2d Cir. 2015) (quoting <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011)). "Where the same conduct or practice by the same

defendant gives rise to the same kind of claims for all class members, there is a common question." Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137-38 (2d Cir. 2015). Here, plaintiff has identified numerous questions of law and fact, including whether the "Continue/Cancel Prompt" screen is materially misleading, that are subject to common proof and arise from the same course of conduct, to wit, defendant's uniform use of the "Continue/Cancel Prompt" screen at its ATMs. See Pl. Mem. at 13. Accordingly, plaintiff has satisfied the commonality requirement.

Third, to prove typicality, plaintiff "must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009). If it is "alleged that the same unlawful conduct was directed at or affected both the named plaintiff and class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, like all other class members, Mr. Polvay was faced with the same allegedly deceptive "Continue/Cancel Prompt" screen and was assessed two balance inquiry fees as a result of pressing "Continue." See Polvay Decl., ¶¶ 3-7; FAC, ¶ 40; Carpenter Decl., Ex. 8, at 103:13-25, ECF No. 35-8. Furthermore, Mr. Polvay's claims, like all putative

class members, are based on Sections 349 and 350 of the New York GBL. Accordingly, the typicality requirement is satisfied.

Fourth, it is uncontested that the adequacy requirement is met. This requirement "entails [an] inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." In re Flag Telecom Holdings, 574 F.3d at 35. The "focus" of this inquiry "is uncovering conflicts of interest between" the Lead Plaintiff and the class. Id. There is no indication that the interests of Mr. Polvay and the class diverge. Mr. Polvay has also been actively involved in the litigation, see Polvay Decl., ¶¶ 4-6, ECF No. 47, and his counsel are well-qualified to represent the class, see Carpenter Decl., ¶¶ 2-15, ECF No. 46. Accordingly, the adequacy requirement is satisfied.

Fifth, the ascertainability requirement "requires only that a class be defined using objective criteria that establish a membership with definite boundaries." In re Petrobras Sec., 862 F.3d at 264. A declaration from plaintiff's expert Arthur Olsen states that he can ascertain the members of the class and calculate damages using an algorithm and that the necessary transactional information to do so is in possession of defendant and the banks. See Carpenter Decl., Ex. 11, ¶¶ 15-23, ECF No. 35-11. Defendant protests that this declaration is insufficient, arguing that

"plaintiff must actually demonstrate that [an algorithm] can be designed and that it will work and how it will work" and that plaintiff must show he will be able obtain the necessary data from the banks. See Def. Mem. in Opp'n to Mot. for Class Certification ("Def Mem.") at 15-16, ECF No. 51.

Defendant's argument proves too much. There is no requirement that plaintiff actually design the algorithm before the class has been certified in order to prove ascertainability. Requiring that would be in some tension with the Second Circuit's pronouncement that ascertainability is a "modest threshold requirement [that] will only preclude certification if a proposed class definition is indeterminate in some fundamental way." In re Petrobras Sec., 862 F.3d at 269. Instead, Mr. Olsen's declaration, which explains what data is available, how that data would be processed, and that he can ascertain class members using an algorithm, is more than sufficient at this stage. Furthermore, defendant's speculation that some third-party banks may refuse to turn over the necessary data is not a sufficient basis for finding the class is not ascertainable. That is a discovery dispute that the Court can mediate when and if it arises. Accordingly, the Court finds that the ascertainability requirement is satisfied.

Sixth, the predominance "requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Myers, 624 F.3d at 547. Here, common questions predominate. Defendant's only objection on this score was that causation cannot be proven on a class-wide basis; however, because plaintiff can rely on the presumption of reliance, causation is now a question that should be considered common to the class. In addition, defendant does not contest plaintiff's position that the questions of whether the "Continue/Cancel Prompt" screen was materially misleading and whether the "Continue/Cancel Prompt" screen was consumer-oriented are common to the class. And neither side has provided any reason to think the calculation of damages will present individual issues that will predominate over the common questions. Accordingly, the predominance requirement is satisfied.

Finally, to assess superiority, courts must consider four factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigating concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class." Fed. R. Civ. P. 23(b)(3). Here, given that each class members' individual claim is of low value, a class action is not only the superior mechanism, but is likely the only mechanism

through which it would be economically feasible for class members to maintain their claims against FCTI.

Defendant attempts to defeat this commonsense conclusion by arguing that a class action is not the superior mechanism for resolving the claims because the banks that actually charged the balance inquiry fees are not joined as defendants, which will limit the Court's ability to fashion appropriate relief. See Def. Mem. at 18-19. That argument is meritless and borderline frivolous. The banks are not necessary parties for resolving the claims against FCTI for its own decision to use the allegedly deceptive "Continue/Cancel Prompt" screen. If for some reason the banks are independently liable for charging the second balance inquiry fees, that can be litigated in a separate lawsuit, without impacting the ability of this Court to fashion and award relief against FCTI if it violated New York law. Finally, if for some reason FCTI believes the banks are liable to FCTI to the extent that FCTI is liable to plaintiffs in this class action, FCTI should have impleaded those banks in a timely fashion but chose not to. Accordingly, the Court finds that the superiority requirement is satisfied.

In sum, all the requirements of Federal Rule of Civil Procedure 23(b)(3) are satisfied.

IV.  Conclusion

For the foregoing reasons, the Court reconfirms its prior ruling that class certification is proper. The parties are directed to jointly call Chambers by Monday, February 5, 2024, to set a trial date.

SO ORDERED.

Dated:    New York, NY

January 29, 2024          JED S. RAKOFF, U.S.D.J.